# 1UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

YOUSEF ATIFAH,

        Plaintiff,

v.

UNION SECURITY INSURANCE COMPANY,
formerly known as Fortis Benefits Insurance
Company,

        Defendant.

_____/

CASE NO. 08-10042

HON. MARIANNE O. BATTANI

### OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING AS MOOT PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXPERT WITNESSES

Before the Court is Plaintiff Yousef Atifah's Motion for Summary Judgment (Doc. No. 54), Defendant Union Security Insurance Company's ("USIC") Motion for Summary Judgment (Doc. No. 56), and Plaintiff's Motion to Strike Defendant's Expert Witnesses and to Preclude their Testimony at Trial (Doc. No. 68). The Court heard oral argument on January 6, 2010, and for the reasons that follow, the Court **DENIES** Plaintiff's Motion for Summary Judgment, **GRANTS** Defendant's Motion for Summary Judgment, and **DISMISSES** as moot, Plaintiff's Motion to Strike Defendant's Expert Witnesses.

## I. STATEMENT OF FACTS

Plaintiff filed this action to recover accidental death benefits for the death of his mother, insured Husn Henaibar, under policy, #210119A694F9, which named Plaintiff as beneficiary. See Pl.'s Ex. A. USIC issued the policy approximately four months before

Henaibar's death on or about December 1, 2004, as a result of an accident. The policy provided a $50,000 benefit for an accidental death, a $100,000 benefit for death in a motor vehicle accident, and a $1 million benefit for death in a licensed common carrier.

Defendant paid Plaintiff $100,000 pursuant to the policy. Plaintiff filed suit, asserting that Henaibar's death falls within the common carrier coverage, and he is entitled to the $1,000,000 benefit.

## II. STANDARD OF REVIEW

A trilogy of United States Supreme Court cases - Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, (1986); and Celotex Corp. v. Catrett, 477 U.S. 317, (1986) – set the standards for deciding whether to grant a motion for summary judgment. The Court of Appeals for the Sixth Circuit, in turn, has created guidelines in administering the principles set forth in the three Supreme Court cases above.

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).

Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). However, the court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes a grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the

cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.

However, the evidence itself need not be the sort admissible at trial, with the exception that it must be more than the nonmovant's own pleadings and affidavits. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). The mere existence of a scintilla of evidence in support of the nonmovant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the nonmovant. Anderson, 477 U.S. at 252.

## III. ANALYSIS

The Court's jurisdiction over this dispute is based upon diversity of citizenship. The parties agree that Michigan substantive law governs the outcome. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). Two issues are raised in the motions: entitlement as a matter of law to the $1,000,000 benefit under the common carrier coverage, and the scope and propriety of Defendant's experts' testimony at trial.

The first issue to be resolved is whether the policy language governing benefits for injury while traveling by common carrier is ambiguous. The common carrier coverage

3

provision reads as follows:

> Travel by Common Carrier. The policy provides benefits for a Covered Person if he suffers a loss or is injured while occupying, as a fare-paying passenger, a public conveyance provided and operated by a duly licensed common carrier for a regular passenger service by land, water, or air.

Pl.'s Ex. A.

The Accidental Death and Dismemberment Benefits Certificate No. 210119A694F9 ("Certificate") defines a common carrier as "an air, land, water conveyance operated under a license for regularly scheduled fare paying passenger service." Def.'s Ex. 3, p 1. The term "regularly scheduled" is not defined. According to Plaintiff, the omission creates an ambiguity.

In resolving whether an ambiguity exists, the Court is mindful of its duty to ascertain the intent of the parties, which is discerned from the agreement itself.

> [W]hen the language of an agreement leaves no doubt as to its meaning . . . it must be considered without regard to its extraneous facts. The intention of the parties is to be deduced from the language employed by them. The question is not what intention existed in the minds of the parties, but what intention was expressed in the language used; and where unambiguous, the terms of the [agreement] are conclusive.

Moore v. Kimball, 289 N.W. 213, 215 (Mich. 1939), see also Quality Prods. & Concepts Co., v. Nagel Precision, Inc., 666 N.W.2d 251, 259 (Mich. 2003).

In contrast, when a contract is ambiguous, its meaning becomes a question of fact with the fact-finder trying to discern the parties' intent. UAW-GM Human Res. Ctr. v. KSL Recreation Corp., 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) (quoting Raska v. Farm Bureau Ins. Co., 314 N.W.2d 440, 441 (Mich. 1982). If any ambiguity exists in the contract, the Court may refer to extrinsic evidence to determine the intent of the parties,

but any ambiguity in the language of the contract must be construed against its drafter. United Rentals (N.A.), Inc. v. Keizer, 355 F.3d 399, 409 (6th Cir. 2004).

Here, Plaintiff contends that the policy is ambiguous for several reasons: the variance between the dictionary definition and the policy definition of common carrier, the omission of a definition of "regularly scheduled," and the representations of the telemarketer. The Court discusses each contention below.

### 1. Policy Terms

Plaintiff asserts that the policy is ambiguous as a matter of law, and therefore, the policy must be enforced in favor of Plaintiff. The policy contains the same definition of common carrier and the same "travel by Common Carrier" coverage provisions as those contained in the Certification. Def.'s Ex. 3 and 15. Therefore, there is no contradiction between the written documents.

Instead, Plaintiff attempts to create ambiguity by directing the Court's attention to a dictionary definition of common carrier rather than the definition included in the policy. For example, Atifah references Merriam Webster's Online Dictionary, which defines a common carrier as "a business or agency that is available to the public for transportation of persons, goods, or messages." Pl.'s Motion for Summary Judgment and Brief in Support at p. 13 (citation omitted). This definition is broader than the definition set forth in the contract, and seemingly would encompass the facts of Henaibar's accident.

When a contact defines a term, however, a court must follow the policy's definitions. Amerisure Mut. Ins. Co. v. Carey Transp., Inc., 578 F. Supp.2d 888 (W.D. Mich. 2008) (citations omitted). The Court is not free to rewrite definitions and declines to find an

5

ambiguity exists based on the difference between the policy language and a dictionary definition.

Next, Plaintiff asserts that the lack of a definition of the term "regularly scheduled" renders the contract ambiguous. Case law undermines his assertion. Specifically, the omission of a definition of a term in a policy that has a common usage does not create an ambiguity. Jervis Webb Co. v. Everest Nat'l Ins., Co., 650 N.W.2d 722, 725 (Mich. Ct. App. 2002) (citation omitted).

Here, the plain terms of the policy require Plaintiff to show that his decedent was traveling by a common carrier duly licensed to provide regularly scheduled service at the time of her death. Despite Defendant's failure to include a definition of "regularly scheduled," the term is not ambiguous.

In Smith v. Am. Family Life Assurance Co. of Columbus, No. 08-31032, 2009 WL 3066660 (5th Cir. Sept. 28, 2009), the court addressed policy coverage for a helicopter accident under a common carrier provision. The policy required common-carrier vehicles to "operate on a regularly scheduled basis between predetermined points or cities." Id. at * 5. The court held that the policy's regularly scheduled requirement was not ambiguous. Id.

In analyzing the issue, the appellate court noted other decisions that reached the same conclusion and found the reasoning persuasive.

> Several courts in other jurisdictions have found that language similar to the "regularly scheduled" requirement in Mrs. Smith's policy does not include on-demand flights or air taxi services. See Fosse v. Allianz Life Ins. Co., No. CIV. A. 93-1110, 1994 WL 139413, at *2-3 (E.D. Pa. Apr. 20, 1994) (mem.op.) (holding that a "regular scheduled" trip within the meaning of the insurance policy at issue is one that the air carrier conducts "pursuant to a

6

set schedule with fixed times," not a flight operated on-demand or as an air taxi); Frizzell v. Stonebridge Life Ins. Co., No. A03-155 CV JWS, 2004 WL 2786140, at *3 (D. Alaska Oct. 25, 2004) (holding that, "Because the helicopter was operated on-demand, with the departure date [and] time determined 'on an as needed basis,' the helicopter was not operated with a definite regular schedule of departures and arrivals, and consequently does not qualify as a 'Common Carrier' under the Policy"); McBride v. Prudential Ins. Co., 147 Ohio St. 461, 72 N.E.2d 98, 99-100 (1947) (holding that a commercial airplane chartered for hire to transport a passenger on a hunting trip was not a "regularly scheduled passenger flight" within the meaning of the insurance policy at issue, because "regularly scheduled passenger flight" meant "trips regularly scheduled as to [the] time of departure and arrival by commercial airlines operating between definitely established airports").

Id. at * 6.

In contrast, Plaintiff fails to cite any case law finding the term "regularly scheduled" ambiguous. Since the December 1, 2004, accident there has been no evidence produced by Plaintiff to show that the vehicle was regularly scheduled. This is fatal to Plaintiff's claim because he has the burden of proving coverage.

### 2. Representations/omissions during the sales call

Plaintiff asks the Court to consider additional extrinsic evidence in order to disclose the ambiguity. Specifically, Henaibar was told during the telemarketing phone call that the policy covered her travels overseas. He argues that the representation, even when read with the policy, creates ambiguity because there the policy contains no definition of a regularly scheduled. Plaintiff concludes that the insured would not know whether a taxi would qualify as a common carrier, particularly in light of the fact that the definition of a private passenger vehicle did not reference taxis.

Even if the Court were to look to extrinsic evidence, its conclusion would not change. During the sales presentation, before Henaibar agreed to purchase the policy,

7

she asked some questions about coverage. Specifically, she inquired whether the coverage applied if she was traveling overseas in a plane, automobile, or by bus. The telemarketer stated that anything for which she paid a fare would trigger the million dollar provision. Pl.'s Ex. D. Plaintiff asserts that the statement made by the agent did not put the insured on notice that death in a licensed taxi would not be covered as death in a common carrier. Plaintiff has advanced evidence that the decedent paid a fare for the taxi in which she was traveling when she was in a fatal accident. Pl.'s Ex. E. Consequently, Plaintiff concludes that Henaibar's accident falls within the common carrier coverage.

Plaintiff's reliance on the fact that the telemarketer did not mention any requirement that the carrier have a regular schedule is misplaced. There is no dispute that during the telemarketer phone call, Henaibar is encouraged to read the Certificate. Further, Plaintiff admits that Henaibar received the Certificate and cover letter. The August 5, 2004, letter advises that the enclosed materials include important information about your coverage and its benefits." Def.'s Ex. 18. Despite Plaintiff's argument that the certificate is ambiguous, the certificate states that "the Policy, any attachment and [Henaibar's] enrollment form are the entire contract of insurance. . . . No agent has authority to change the Policy or to waive any of its provisions." Def.'s Ex. 3. It also notified Henaibar that she could cancel her insurance if she was not satisfied. Id.

Therefore, Plaintiff is not entitled to a favorable interpretation based on the sales conversation. Plaintiff is only entitled to summary judgment if it is clear and unambiguous under the terms of the insurance policy that Henaibar's accident is a covered loss. The policy terms dictate that Plaintiff's loss is not covered because the taxi cannot be

8

considered a common carrier under the policy.

Although the parties also dispute whether the facts of this case meet the "duly licensed" requirement and whether Henaibar was a "fare-paying passenger," the Court finds that the "regularly scheduled" requirement is dispositive. In light of the Court decision on the merits, Plaintiff's motion to strike is moot.

I**V. CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion to Strike Defendant's Expert Witnesses and to Preclude Their Testimony at Trial is **MOOT**.

**IT IS SO ORDERED.**

            s/Marianne O. Battani
            MARIANNE O. BATTANI
            UNITED STATES DISTRICT JUDGE

Date: March 3, 2010

**CERTIFICATE OF SERVICE**

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

            s/Bernadette M. Thebolt
            Case Manager